WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re: Experian Information Solutions, Incorporated | **No. CV-15-01212-PHX-GMS** (LEAD CASE) <br><br> **ORDER** <br><br> **Consolidated With:** <br><br> No. CV-16-01888-PHX-GMS <br> No. CV-16-01883-PHX-GMS <br> No. CV-16-01879-PHX-GMS <br> No. CV-16-01877-PHX-GMS <br> No. CV-16-01847-PHX-GMS <br> No. CV-16-01727-PHX-GMS <br> No. CV-16-01834-PHX-GMS <br> No. CV-16-01824-PHX-GMS <br> No. CV-16-01825-PHX-GMS <br> No. CV-16-01728-PHX-GMS <br> No. CV-16-01890-PHX-GMS <br> No. CV-16-01844-PHX-GMS <br> No. CV-16-01731-PHX-GMS <br> No. CV-16-01729-PHX-GMS <br> No. CV-16-01730-PHX-GMS <br> No. CV-16-01845-PHX-GMS <br> No. CV-16-01833-PHX-GMS <br> No. CV-16-00660-PHX-GMS <br> No. CV-16-00661-PHX-GMS <br> No. CV-16-00663-PHX-GMS <br> No. CV-16-00665-PHX-GMS <br> No. CV-16-00666-PHX-GMS <br> No. CV-16-00667-PHX-GMS <br> No. CV-16-01039-PHX-GMS |

**No. CV-16-02987-PHX-GMS**
**No. CV-16-03038-PHX-GMS**
**No. CV-16-03039-PHX-GMS**
**No. CV-16-03040-PHX-GMS**
**No. CV-16-03041-PHX-GMS**
**No. CV-16-03005-PHX-GMS**

Pending before the Court are cross motions for summary judgment by Plaintiff John McIntyre, (Doc. 243), and Defendant Experian Information Solutions, Inc. ("Experian"), (Doc. 245). For the following reasons, the Court grants Defendant's motion and denies Plaintiff's motion.

## BACKGROUND

The thirty-one cases consolidated in this action all involve similar factual allegations. A consumer utilized the services of a "credit repair organization" ("CRO") in an effort to improve his or her credit score. That CRO contacted Experian, a "consumer reporting agency" ("CRA"), and, purporting to act on behalf of the consumer, the CRO disputed the accuracy of certain items on the consumer's credit report. Rather than immediately investigate whether the disputed items were accurately reported, Experian notified the consumer that it had received suspicious correspondence that appeared to come from someone other than the consumer, and that Experian would not initiate a reinvestigation based on that correspondence.

John McIntyre was one of those consumers, and the parties have designated him as the bellwether plaintiff. Much of the factual background of McIntyre's claim is not in dispute. On March 5, 2015, McIntyre, a resident of California, contacted Go Clean Credit LLC ("GCC"), a CRO, to assist him in improving his credit report. McIntyre and GCC entered into a written agreement, which purported to

> grant[] GCC a limited power of attorney to write and send letters to creditors and credit bureaus on [McIntyre's] behalf and in [McIntyre's] name and to utilize either use [sic] [McIntyre's] electronic signature or for a GCC representative to sign the letters on [McIntyre's] behalf.

(Doc. 282 at 2.)[1]

Initially, at GCC's direction, McIntyre sent a "personal information dispute letter." (Doc. 248-2 at 23–27.) In this letter, McIntyre disputed the accuracy of certain items on his Experian credit report. (Doc. 248-2 at 471–76.) He signed the letter himself and mailed it himself from his California address. (*Id.*) There is no dispute that Experian received the letter, deleted an inaccurate item from the credit report and updated several others, and sent McIntyre a letter to this effect.

From that point on, GCC handled all the correspondence. On or about March 18, 2015, GCC prepared a letter, addressed to Experian, disputing nine items on McIntyre's credit report. Experian has no record of receiving this letter; GCC asserts that there is evidence it was sent based on a line item in a computer record. (Doc. 282 at 3, Doc. 260 at 5).

Another letter, sent by GCC, soon followed. This letter was prepared on or about April 20, 2015, and it again addressed certain items on McIntyre's credit report. On May 8, 2015, Experian sent McIntyre a letter stating in part:

> Dear John McIntyre
>
> We received a suspicious request in the mail regarding your personal credit report and determined that it was not sent by you. Suspicious requests are reviewed by Experian security personnel who work regularly with law enforcement officials and regulatory agencies to identify fraudulent and deceptive correspondence purporting to originate from consumers.
>
> In an effort to safeguard your personal credit information from fraud, we will not be initiating any disputes based on the suspicious correspondence. Experian will apply this same policy to any future suspicious requests that we receive regarding your personal credit information, but we will not send additional notices to you of suspicious correspondence.

(Doc. 243-7 at 2.)

---

[1] Experian does not dispute that such a written agreement exists, but contends that it is void because GCC never registered with the California Secretary of State or the California Attorney General pursuant to California Civil Code §§ 1789.18 and 1789.25(a). (Doc. 260 at 2.) McIntyre does not dispute that GCC did not register with the California officials in compliance with those statutory provisions, but does not concede that this made the written agreement void.

This letter reflects Experian's policy of not investigating disputes that appear not to have been sent directly by a consumer. Experian investigates disputes that come directly from a consumer, but "generally speaking" does not process disputes that do not come directly from a consumer. (Doc. 283 at 8.)

McIntyre's suit alleges that Experian's failure to immediately investigate the disputes sent by GCC violates the Fair Credit Reporting Act ("FCRA") in two ways. He first alleges that Experian failed to fulfill its duty under the reinvestigation provision of the statute, which reads as follows:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . before the end of the 30-day period beginning on the date in which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i(a)(1)(A).

McIntyre also alleges violation of the reasonable procedures provision of the statute, which reads as follows:

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C. § 1681e(b).

Each of McIntyre's two claims for relief alleges violations of both provisions. Count I of McIntyre's Amended Complaint alleges that Experian negligently violated both § 1681e(b) and § 1681i, while Count II alleges a willful violation of those provisions. (Doc. 214 at 5–7.)

/ / /

/ / /

**DISCUSSION**

**I.     Legal Standard**

The Court grants summary judgment when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, the Court views the evidence "in a light most favorable to the non-moving party." *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). Where the parties have filed cross-motions for summary judgment, the Court "evaluate[s] each motion independently, 'giving the nonmoving party in each instance the benefit of all reasonable inferences.'" *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1150 (9th Cir. 2015) (quoting *ACLU v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003)).

Although "[t]he evidence of [the non-moving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor," the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-moving party must show that the genuine factual issues "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250).

**II.    Analysis**

      **a.    Experian Had No Duty to Reinvestigate under § 1681i.**

Section 1681i provides that:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i(a)(1)(A).

Three facts relevant to this section are undisputed. First, McIntyre sent a letter to Experian disputing an item on his credit report, and Experian conducted a reinvestigation in compliance with §1681i. (Doc. 246 at 3, Doc. 285 at 2.) Second, GCC sent multiple letters to Experian disputing certain items on McIntyre's credit report, and Experian did not conduct a reinvestigation within the meaning of § 1681i. (Doc. 282 at 3, Doc. 260 at 6–7.) Third, GCC is not a "reseller" as defined in § 1681i(a)(1)(A). (Doc. 246 at 3, Doc. 285 at 2.)

Additionally, GCC is not a "consumer" as defined in § 1681i(a)(1)(A). The statute defines "consumer" as "an individual." 15 U.S.C. § 1681a(c). By contrast, a "person" under FCRA "means any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a(b). A business such as GCC is thus a "person" but not an "individual"—and therefore, not a consumer.

That leaves a question of law that is simply stated: With respect to the letters sent by GCC, did the consumer—McIntyre—notify the agency—Experian—"directly," such that Experian was obligated to conduct a reinvestigation under § 1681i? *See Saenz v. Trans Union, LLC*, 621 F. Supp. 2d 1074, 1082 (D. Or. 2007) (noting that a successful § 1681 claim must show that "the plaintiff notified the consumer reporting agency directly

- 6 -

of the inaccurate or incomplete information").[2]

"The starting point for the interpretation of a statute is always its language[.]" *Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1268 (9th Cir. 2009). Section 1681i itself does not further define either "notifies" or "directly." Webster's Third New International Dictionary defines "notify" as "to point out," to "give notice of," or to "make known." Webster's New Int'l Dictionary 1545 (3d ed. 1981). The most relevant definition of "directly" is "without any intervening agency or instrumentality or determining influence." Webster's New Int'l Dictionary 641 (3d ed. 1981). Plainly understood, then, § 1681i requires that a consumer point out an inaccuracy to a CRA without an intervening actor.

This understanding of the words "notify" and "directly" is bolstered by the phrase in which they appear. A consumer must "notif[y] an agency directly, or indirectly through a reseller."[3] 15 U.S.C. § 1681i(a)(1)(A). The contrast between "directly" and "indirectly" is the contrast between the consumer doing something alone and the consumer doing something with the assistance of a third party. It would make little sense to say that a consumer who notifies a CRA through a reseller acts indirectly, while a consumer who notifies a CRA through a CRO acts directly.[4]

The Court must also "look[] to the entire statutory scheme" in determining "the

---

[2] As *Saenz* noted, other provisions in § 1681i impose additional requirements on a successful § 1681i claim. The report must actually contain inaccurate or incomplete information, the dispute must not be frivolous or irrelevant, and the CRA must fail to respond with a reasonable reinvestigation. Here, the requirement of direct notification is dispositive and the Court need not discuss the other factors.

[3] A reseller is "a consumer reporting agency that assembles and merges information contained in the database of another consumer reporting agency or multiple consumer reporting agencies concerning any consumer for purposes of furnishing such information to any third party . . . and does not maintain a database of the assembled or merged information from which new consumer reports are produced." 15 U.S.C. § 1681a(u).

[4] McIntyre argues that "the adjectives 'direct' and 'indirect' as used in the FCRA focus on the person receiving the dispute rather than the person who sent the dispute." (Doc. 284 at 5.) Thus, McIntyre argues, a CRA receives a dispute directly when the dispute is sent *to* the CRA; and receives a dispute indirectly when the dispute is sent to a third-party (e.g., a furnisher) and the CRA is notified. The grammatical structure of § 1681i(a)(1)(A) forecloses this interpretation. The subject of the sentence is the consumer who notifies —directly or indirectly—not the CRA who is notified.

plain meaning of a particular statutory provision." *United States v. Dass*, 198 F.3d 1167, 1174 (9th Cir. 1999). Section 1681s-2, the portion of FCRA dealing with the responsibilities of furnishers of information to CRAs, maintains the distinction between the actions of a consumer and the actions of a third party acting on the consumer's behalf, and does so with reference to CROs specifically. Section 1681s-2 directs the Consumer Financial Protection Bureau ("CFPB") to "prescribe regulations that shall identify the circumstances under which a furnisher shall be required to reinvestigate a dispute concerning the accuracy of information contained in a consumer report on the consumer, based on a direct request of a consumer." 15 U.S.C. § 1681s-2(a)(8)(A). But a furnisher is not required to reinvestigate a dispute "if the notice of the dispute is submitted by, is prepared on behalf of the consumer by, or is submitted on a form supplied to the consumer by, a credit repair organization." 15 U.S.C. § 1681s-2(a)(8)(G). Thus, disputes submitted by a CRO are specifically excluded from the definition of "direct" disputes.

While § 1681s-2 bolsters the distinction between direct disputes by the consumer and indirect disputes by third-parties, it also shows that Congress knew how to specifically exclude CROs from the definition of direct disputes, and apparently chose to do so in § 1681s-2 but not in § 1681i. That argument has less force, however, given the nature of the two statutory provisions. Section 1681i prescribes the requirements for a reinvestigation conducted by a CRA and, as discussed above, the best reading of those requirements indicates that CRAs are not required to reinvestigate disputes sent by CROs. Section 1681s-2, on the other hand, gives guidance to the CFPB in creating regulations on reinvestigations conducted by furnishers, and Congress may have thought it important to ensure that CROs could not initiate disputes to which furnishers would be required to respond. This seems more plausible than the idea that Congress would wish to empower CROs to send disputes to CRAs, but not to furnishers.

Further, the interpretation of § 1681i as imposing no duty on CRAs to reinvestigate disputes sent by CROs is in accordance with what authority exists on the matter. The Federal Trade Commission ("FTC"), which was originally tasked with

interpreting FCRA, interpreted § 1681i as follows in 2011, when authority over FCRA was transferred from the FTC to the CFPB:

> A CRA need not investigate a dispute about a consumer's file raised by a third party—such as a "credit repair organization" denned in 15 U.S.C. § 1679a(3)—because the obligation under this section arises only where file information is disputed "by the consumer" who notifies the agency "directly of such dispute.

Federal Trade Commission, 40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations, 2011 WL 3020575, at *70 (July 1, 2011). While the CFPB has neither adopted nor repudiated the FTC's interpretation, the FTC's guidance constituted persuasive authority at the time it was issued. *See, e.g.*, *Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000) ("Interpretations contained in formats such as opinion letters are 'entitled to respect' . . . but only to the extent that those interpretations have the 'power to persuade.'"). In the absence of contrary guidance from the CFPB, the FTC interpretation still represents "a body of experience and informed judgment," *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), and it is appropriate to consider it.

The United States District Court for the Eastern District of Pennsylvania considered the FTC interpretation of FCRA in 2008, prior to the handover to the CFPB, and concluded on summary judgment that based on the plain language of the statute as well as the persuasive value of the FTC interpretation, a CRA was not obligated to reinvest a dispute when a consumer simply signed and sent dispute letters that had been prepared for him by a CRO. *Klotz v. Trans Union, LLC*, No. 05-4580, 2008 WL 2758445, at *4–5 (E.D. Pa. July 16, 2008). That decision rested primarily on the Court's finding that, under those facts, given the consumer's lack of involvement, the disputes were not "by" him as required by FCRA. Here, on the undisputed facts, McIntyre's participation was even less than that of the consumer in *Klotz*. He took part in an initial credit consultation with GCC and remained in touch with them, but "left . . . how the accounts would be disputed to GCC's expertise." (Doc. 282 at 2.) Apart from the

"personal information dispute letter"—in response to which Experian initiated a reinvestigation—he did not send any of the letters.

More recently—in June of this year—the United States District Court for the Northern District of Ohio granted summary judgment to Experian in a case factually indistinguishable from the case before this Court. *See Turner v. Experian Info. Sols., Inc.*, No. 3:16 CV 630, 2017 WL 2832738, at *5 (N.D. Ohio June 30, 2017).[5] The *Turner* court considered the language of the statute and the FTC interpretation, as well as case law, in construing § 1681i as not requiring a CRA to respond to a dispute sent by a CRO. The court noted that neither the plaintiff nor the court had found a single case holding that § 1681i required a CRA to respond to a dispute sent by a CRO. *Turner*, 2017 WL 2832738, at *8. The court concluded that "under any reasonable interpretation of the term" the plaintiff had not directly notified the CRO of the dispute when she "did not draft the dispute letter, provide documentation supporting its claims, review its accuracy, sign it, or mail it." *Id.* Based on this Court's review of the statute, the case law, and the FTC guidance, that conclusion is appropriate here too.[6]

Accordingly, Experian had no duty to reinvestigate the dispute sent by GCC on behalf of McIntyre.[7]

### b. There is no evidence creating a genuine issue of material fact as to a violation of § 1681e(b).

McIntyre's claim for a violation of the "reasonable procedures" requirement of §

---

[5] Indeed, in that case, as here, the CRA was Experian and the CRO was GCC.

[6] *Turner* did not address whether the plaintiff there had signed a limited power of attorney agreement with the CRO, as McIntyre did here. Assuming that McIntyre's limited power of attorney is valid—which Experian contests due to GCC's failure to comply with the California Credit Services Act—the limited power of attorney does not change the result here. Even assuming without deciding that § 1681i requires that a CRA process a dispute sent by a CRO with power of attorney, Experian could hardly be said to have willfully or even negligently violated this requirement when GCC neither identified itself nor provided Experian with the power of attorney, but simply sent letters that were purportedly from McIntyre.

[7] That Experian has reinvestigated disputes initiated by a consumer's attorney does not change this conclusion. The scope of FCRA's reinvestigation requirement does not expand based on a CRA going beyond its statutory duty.

- 10 -

1681e(b) rests on the same factual basis as his claim for a violation of his "reinvestigation" rights under § 1681i. That is, he argues that the procedures Experian followed in choosing not to reinvestigate because the mail was suspicious are not reasonably calculated to ensure the maximum possible accuracy of the credit reports.

Section 1681e(b), however, does not apply to reasonable procedures in the reinvestigation of a report after a qualifying complaint has been made. As a matter of statutory text, § 1681e(b) requires "reasonable procedures" in the "prepar[ation]" of a "consumer report" so as to achieve "maximum possible accuracy." A "consumer report" is defined as:

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for credit or insurance to be used primarily for personal, family, or household purposes; employment purposes; or any other purpose authorized under [FCRA].

15 U.S.C. § 1681a(d)(1).

Section 1681i requires a "reasonable reinvestigation" if a consumer disputes "the completeness or accuracy of any item of information contained in a consumer's file." That section further prescribes certain procedures that a CRA must follow as part of that reinvestigation.

The two sections thus impose different requirements on different stages of a CRA's handling of a consumer's credit information.[8] And because the statutory provisions apply to distinct aspects of a CRA's ongoing obligations under FCRA,

---

[8] This distinction has been widely recognized by other courts. *See, e.g.*, *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 66 n.10 (1st Cir. 2008) (noting that "courts have been careful to draw distinctions between the burdens imposed by § 1681e(b) and § 1681i"); *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) (contrasting "the § 1681e(b) investigation [with] the § 1681i(a) *re*investigation" (emphasis in original)); *Anthony v. Experian Info. Sols. Inc.*, No. 2:14-cv-01230-MCE-EFB, 2017 WL 1198499, at *5 (E.D. Cal. Mar. 31, 2017) ("The focus of this section is on the reasonableness of a CRA's procedures in obtaining credit information, rather than on a CRA's reasonableness in reinvestigating credit information.").

evidence that a CRA's reinvestigation procedures are deficient is not relevant as to whether its procedures for the preparation of a consumer report were reasonable. The United States District Court for the Central District of California, citing a wealth of district court precedent, recently explained this:

> Finally, to the extent [the plaintiff] adduces evidence of defendants' procedures, his proof relates exclusively to their reinvestigation procedures. . . . These alleged inadequacies concern defendants' reinvestigation procedures under § 1681i . . . i.e., what defendants should have done in response to [the plaintiff's] assertion that the . . . reporting was inaccurate. As noted, § 1681e(b) obligations concern "the maintenance and operation of [a credit reporting agency's] own internal databases rather than to investigation of the accuracy of information received from external sources
>
> Accordingly, evidence of inadequacies in defendants' reinvestigation procedures under § 1681i . . . is not probative of the fact that defendants have violated § 1681e(b) . . . . Since [the plaintiff] proffers no evidence of inadequacies in defendants' internal databases, he has failed to raise triable issues of fact concerning his § 1681e(b) [claim].

*Grigoryan v. Experian Info. Sols., Inc.*, 84 F. Supp. 3d 1044, 1070–71 (C.D. Cal. 2014) (internal citations omitted).[9]

Here, all the evidence presented on Experian's procedures is specifically directed toward Experian's *reinvestigation* procedures, and McIntyre's briefings make clear that that forms the basis of his § 1681e(b) theory of liability. (Doc. 243 at 2, 6–7, 14–15; Doc. 265 at 7; Doc. 284 at 2, 10–14.) But as discussed above, allegations of deficient reinvestigation procedures alone do not support a claim under § 1681e(b).

---

[9] Again, this distinction has been widely recognized. *See, e.g.*, *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1240–45 (10th Cir. 2015) (applying different facts to § 1681e(b) and § 1681i analyses); *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 896 & n.7 (5th Cir. 1998) (declining to consider CRA's conduct after consumers disputed entry under § 1681e(b) claim since such evidence would only be considered under § 1681i); *Alston v. Equifax Info. Servs., LLC*, No. TDC-13-1230, 2016 WL 5231708, at *9 (D. Md. Sept. 21, 2016) (granting summary judgment to CRA on 1681e(b) claim when record evidence only "addressed the reasonableness of [CRA's] reinvestigation . . . after [consumer] filed disputes [with no evidence that CRA] failed to follow reasonable procedures in originally preparing [consumer's] credit report"); *Saenz*, 621 F. Supp. 2d at 1081 ("Evidence that an agency's reinvestigation procedures were unreasonable is . . . not competent to support a Section 1681e(b) claim."); *but see Thomas v. Trans Union, LLC*, 197 F. Supp. 2d 1233, 1237 (D. Or. 2002) ("I view dispute and reinvestigation as part of the ongoing process of insuring accuracy of credit reports.").

Of course, § 1681i itself requires a *reasonable* reinvestigation, so to the extent that a CRA must engage in a reinvestigation, its procedures must be reasonable.[10] But as the Court has already held, Experian was not under an obligation to conduct a reinvestigation at all. McIntyre had no right, on any view of the facts presented, to any reinvestigation, reasonable or not. It would make little sense to impose liability on Experian, based on § 1681e(b), when the conduct at issue satisfied the requirements of § 1681i.

McIntyre argues that, in the aggregate, Experian's policy of not initiating reinvestigations based on disputes that appear not to have come directly from the consumer will lead to the discarding of legitimate direct disputes, and is thus unreasonable under § 1681e(b). Such an argument, however, is based on policy arguments that are not included in the statutory requirements.

**CONCLUSION**

On the undisputed facts, John McIntyre notified Experian directly of alleged inaccuracies on his credit report once, and Experian undertook the reinvestigation required by 15 U.S.C. § 1681i. All further communications sent on McIntyre's behalf by Go Clean Credit did not trigger Experian's statutory duty to reinvestigate, and therefore Experian did not violate 15 U.S.C. § 1681i by not reinvestigating the disputes. There are no facts presented on Experian's procedures outside of the reinvestigation context, and thus McIntyre's claim under 15 U.S.C. § 1681e(b) fails as a matter of law. Summary judgment is granted to Experian on this case and on the consolidated cases for which this action serves as the bellwether.

**IT IS THEREFORE ORDERED** that the Motion for Summary Judgment of Plaintiff John McIntyre, (Doc. 243), is **DENIED**.

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment of Defendant Experian Information Solutions, Inc., (Doc. 245), is **GRANTED**.

---

[10] This reinforces the conclusion that § 1681e(b) and § 1681i apply to different conduct; § 1681i's requirement of a reasonable reinvestigation would be superfluous if the reasonable procedures requirement of § 1681e(b) also applied to reinvestigations. *See Cushman*, 115 F.3d at 225.

**IT IS FURTHER ORDERED** that judgment is entered in favor of Experian Information Solutions, Inc. and against each Plaintiff in this consolidated matter.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to terminate this action and enter judgment accordingly.

Dated this 16th day of August, 2017.

*[signature]*

Honorable G. Murray Snow
United States District Judge